```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

RICHARD BREWER,

        Plaintiff,

    -v-                                      06-CV-6631T
                                              **ORDER**
MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

## INTRODUCTION

Plaintiff Richard K. Brewer ("Plaintiff" and/or "Brewer"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security improperly denied his application for disability insurance. Specifically, Brewer alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by either the substantial evidence on the record or the applicable law. Brewer requests that the Court finds him entitled to disability benefits under the provisions of the Social Security Act, or, in the alternative, to remand the action to the defendant for a further hearing.

---

1. Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessors Acting Commissioner Linda S. McMahon and Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Plaintiff opposes the Commissioner's motion. For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is denied and the case is remanded to the Commissioner for further proceedings consistent with this decision.

## BACKGROUND

On December 27, 2004, Plaintiff Richard K. Brewer applied for Social Security disability benefits, claiming that he became disabled on September 29, 2004 (Tr. 50-55). His application was denied on February 18, 2005 (Tr. 29-34). He timely filed a request for an administrative hearing on March 23, 2005 (Tr. 35). That hearing was held before ALJ Robert E. Gale, and in a decision dated July 26, 2006, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 12-21). Plaintiff then filed for review of the ALJ's decision by the Social Security Appeals Council on September 21, 2006 (Tr. 10-11). That request was denied by the Council on October 27, 2006 (Tr. 6-8), and Plaintiff subsequently filed this action.

The Plaintiff, who was 41 years old at the onset of his alleged disability (Tr. 50), was employed for approximately 20 years as a metal finisher/plater prior to his application for benefits (Tr. 64). He terminated that employment to undergo

surgery for carpel tunnel disease (Tr. 224).  Plaintiff's job required physical labor including lifting of items weighing over 100 pounds and standing for entire shifts (Tr. 224).  The Plaintiff's education level is unclear: While his SSA-3368 application form indicates that he completed 12th grade (Tr. 69), his testimony before the ALJ revealed that he only completed 11th grade and did not receive a diploma or equivalency (Tr. 223).

The ALJ found that, according to both Plaintiff's testimony and a number of medical/functional evaluations, Plaintiff had reduced capacity for lifting and walking and could not perform past relevant work (Tr. 20).  The Plaintiff testified that he had stiffening of his hands which limited his ability to use a computer and hold small objects (Tr. 223, 232).  He also stated that his rheumatoid arthritis had spread to his lower extremities, causing pain in his knees and feet (Tr. 226).  He had soreness in neck and jaw and difficulty sleeping, including waking up several times each night, which caused him to sleep during the day as well (Tr. 235-37).

The record reflects that the Plaintiff was evaluated for bi-lateral carpel tunnel syndrome by Dr. Robert Meyer on February 12, 2004, upon a referral from Dr. Steven Greenberg (Tr. 94).  Dr. Meyer confirmed the diagnosis of carpel tunnel syndrome, prescribed both therapeutic (use of a splint and hand management)and pharmaceutical (in the form of Vioxx) treatments, and discussed

surgical operations with the Plaintiff (Tr. 94). In March, April, and May of 2004, the Plaintiff met with Dr. Meyer and pursued successively more aggressive treatments for the condition (Tr. 94-98). In June, it was agreed that surgery was needed to correct the problem and the Plaintiff was scheduled for carpel tunnel release surgeries for both arms (Tr. 98).

The Plaintiff underwent corrective surgery for his carpel tunnel syndrome on September 29, 2004 for his right arm and October 20, 2004 for his left arm (Tr. 138-41). On November 24, 2004, Dr. Meyer performed a follow-up and noted that while the left arm was improving, the right arm remained "significantly troubling" (Tr. 102).

Dr. John S. Forrest, an orthopedist, evaluated the Plaintiff on November 30, 2004 and opined that Plaintiff could walk, stand, and sit without restriction but had an extremely weak right hand with no ability to grasp and a weakened (dominant) left hand (Tr. 155-56). Brewer could not do repetitive motion, but could infrequently lift up to 20 pounds (preferably under 10 pounds) without repetitive motion (Tr. 156). Dr. Forrest's overall evaluation was that any activities requiring the use of hands would be largely limited. (Tr. 156).

Dr. Robert Meyer again saw Brewer and on December 31, 2004 concluded that his rheumatoid factor was positive and he was not capable of returning to his prior employment (Tr. 104). At this

time Dr. Meyer referred the Plaintiff to Dr. James Freeman, a rheumatologist (Tr. 104).  On March 22, 2005, Dr. Freeman diagnosed Brewer with active rheumatoid arthritis, at which point he prescribed prednisone and methotrexate (Tr. 172).

At a follow-up with Dr. Meyer in May 2005, Dr. Meyer concluded that the carpel tunnel syndrome had reached "maximum improvement" following surgery and that it was causing only mild impairment (Tr. 178).  In August 2005, Dr. Meyer released the Plaintiff from his care while still indicating significant affects of rheumatoid arthritis (Tr. 179).  At that visit, Dr. Meyer also noted that the Plaintiff "had" been on prednisone and methotrexate and that a more agressive treatment, Humira injections, was unaffordable by Brewer (Tr. 179).

Dr. Freeman saw the Plaintiff on December 1, 2005 and remarked that it was "odd" that the patient had run out of medication in July but had not attempted to get any other medication or a refill (Tr. 185).  Dr. Freeman also noted that the Plaintiff had brought forms for Workers' Compensation and Social Security Disability to the appointment, and had lost his health insurance (Tr. 185).  Dr. Freeman expressed that he was "beginning to question his motivation to get better, particularly now that he is seeking disability benefits" (Tr. 185).  Despite these concerns, Dr. Freeman still noted some "limitations of function remaining [in] both upper and lower extremities" at a subsequent visit on May 2, 2006.  At this

time, Dr. Freeman also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). In that report he indicates that Brewer has exertional limitations including occasional lifting of only 10 pounds, frequent lifting of less than 10 pounds, and is not able to stand for even 2 hours per 8-hour workday (Tr. 209). Dr. Freeman indicates the Plaintiff has Manipulative limitations in reaching, handling (gross manipulation), and fingering (fine manipulation), in that the Plaintiff can only "occasionally" do those things (Tr. 210). He also indicates that the Plaintiff has Environmental limitations in the areas of temperature extremes, vibration, humidity/wetness, and hazards (Tr. 211).

## DISCUSSION

### I.  Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the

Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

A remand to the Commissioner for further development of the evidence under 42 U.S.C. § 405(g) is appropriate when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir.1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996)).

II. <u>The ALJ's finding that the Plaintiff's statements were only "partially credible" was neither supported by substantial evidence nor was it proper as a matter of law.</u>

In deciding whether to accept the subjective testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir.1996). In the instant case, the ALJ properly found that the impairments with which Brewer is afflicted could reasonably be expected to produce the symptoms complained of; the diagnosis of those ailments is consistent within the record and the Defendant does not challenge their validity.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of his symptoms. If there is no evidence of malingering, the ALJ must accept the claimant's testimony. The only derivation can come when the ALJ makes specific findings, including a clear and convincing rationale for the rejection, stating which testimony is not credible and what facts in the record lead to that conclusion. <u>Id.</u> at 1284.

In rendering a decision, the ALJ found that the subjective statements of the Plaintiff regarding "the intensity, persistence, and limiting effects" of his condition were only "partially

credible" (Tr. 20). To make this determination, the ALJ relies on a comment made by a treating physician questioning Brewer's reasons for allowing his medication to run out (Tr. 19-20). In light of the remainder of the record and the applicable law, that determination was not supported by substantial evidence.

<u>A. The ALJ improperly failed to consider the claimant's past work history in assessing credibility.</u>

In evaluating a claimant's credibility, an ALJ must consider all of the evidence presented, "including information about [the claimant's] prior work record." 20 C.F.R. § 416.929(c)(3). The Second Circuit has specifically instructed that credibility determinations should take account of prior work history. <u>Schaal v. Apfel</u>, 134 F.3d 496, 502 (2d Cir.1998) (citing Social Security Ruling 96-7p, 61 Fed.Reg. 34, 483, at 34, 486 (1996)). See <u>Rivera v. Schweiker</u>, 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

In this case, the Plaintiff has what could be described at minimum as a good work record. Plaintiff was employed continuously from 1985 to 2004 in a job that involved a considerable amount of physical labor. His medical records indicate pain affecting him on this job dating back to 1998 (Tr. 180). When Brewer was being treated by Dr. Meyer for his carpel tunnel syndrome (beginning on February 12, 2004), he avoided surgery, instead pursuing conservative treatments that would enable him to keep working. The

Plaintiff only chose surgical treatment (completed in late September and October 2004) when his condition had degraded to a point where performing the duties of his job was no longer possible (Tr. 94-98).

In light of this extensive work history and the claimant's attempts to continue working even after being diagnosed with carpel tunnel syndrome, the report of Dr. Freeman (Tr. 185) upon which the ALJ exclusively relied in making a credibility determination does not provide the clear and convincing evidence required to deviate from the finding of "substantial credibility" to which the claimant's testimony was entitled.

### B. The ALJ improperly neglected to consider reasonable explanations for the failure to take medication in assessing the claimant's credibility.

When a claimant is found to have not followed a prescribed treatment plan without good reason for doing so, the ALJ can find the individual's statements to be less credible. However, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record" that would serve to explain such failure. S.S.R. 96-7p, at 7. See Newell v. Commissioner of Social Security, 347 F.3d 541 (3d Cir. 2003) (An ALJ errs in discrediting a claimant's testimony on the basis of the failure to seek treatment

where the treatment is unaffordable); Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) (Claimant's failure to obtain treatment during period that he had no medical insurance and could not afford treatment could not be used as a basis for the ALJ's finding that claimant's testimony was not credible).  Listed as one of the "good reasons" in S.S.R. 96-7p for not seeking treatment is when "the individual may be unable to afford treatment and may not have access to free or low-cost medical services."

In this case, not only did Brewer lack medical insurance or another way to pay for the treatment, his complaints about its ineffectiveness are noted several times in the record.  On each occasion wherein a doctor takes note of the ineffectiveness of the methotrexate and prednisone prescribed, there is also discussion of more expensive treatments, including Humeira injections, followed by a lament that such treatment is not affordable for the Plaintiff (Tr. 179, 188).  Most telling are the notes of Dr. Freeman upon which the ALJ bases the finding of "partially credible".  In his notes of December 1, 2005, Dr. Freeman refers to the Plaintiff's failure to take medication as "odd" and is surprised by that information (Tr. 185).  This conflicts with his earlier notes of June 22, 2005, in which Dr. Freeman notes that the Plaintiff has stopped taking his medication due to ineffectiveness (Tr. 190), and his notes of August 19, 2005, in which Dr. Freeman writes that the Plaintiff's insurance will not cover Humira injections (Tr. 191).

Furthermore, the Plaintiff took at least some steps to locate a low-cost or free alternative to treatment - at an appointment with Dr. Jeffrey Pokorny on September 1, 2005, the doctor made extensive notes about the Plaintiff's problems affording treatment and made a referral to a social worker to aid with the situation (Tr. 195).

The ALJ also failed to take into account any negative side effects that the medications were having. Under S.S.R. 96-7p, an ALJ cannot discredit a claimant's credibility for not taking medications where the "side effects are less tolerable than the symptoms." The record reflects that the Plaintiff cited negative side effects in his testimony (Tr. 227), but the ALJ did not take that into account when making his credibility determination (Tr. 19).

I find that the Plaintiff's inability to afford medicines that he found to be ineffective at managing his pain and caused negative side effects constitutes a good reason for the Plaintiff to allow the lapse in medication, and as such, that lapse was not a valid reason for the ALJ to discount the Plaintiff's testimony as only "partially credible."

III. The ALJ improperly applied the Medical-Vocational Guidelines in finding that the Plaintiff was not disabled and instead should have sought evidence from a Vocational Expert.

Under the Social Security Act, the Commissioner bears the burden of proof during the final step in a disability determination, that of finding jobs that exist in the economy which

12

the claimant can perform with his residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4)(v). For cases in which the claimant has only exertional limitations, this is done by use of the Medical-Vocational Guidlines ("grids") found in 20 C.F.R. Pt. 404, Subpt. P, App. 2.

However, in cases where the claimant has a combination of exertional and nonexertional limitations, "the guidelines cannot provide the exclusive framework for making a disability determination." Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986). Some courts have held that when this is the case, an ALJ *always* must consult a vocational expert ("VE"). See, e.g. Brassard v. Heckler, 646 F.Supp. 1152 (D.Vt. 1985). Others have held that in some instances, the ALJ can examine the totality of the circumstances without the aid of a VE, using the grid as a framework. See, e.g. Channel v. Heckler, 747 F.2d 577 (10th Cir.1984).

The Second Circuit has taken a hybrid approach, holding that "application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis." Bapp at 605. Specifically, "if a claimant's nonexertional impairments significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." Id. (internal quotes omitted). The court further held that to "significantly limit" the range of work,

13

the claimant's nonexertional limitations need to be severe enough "as to deprive him of a meaningful employment opportunity." Id. at 606.

The Plaintiff has both exertional and nonexertional limitations as shown by the portions of the Medical Source Statement properly received by the ALJ (Tr. 209-212) and by the remainder of the record.  His exertional limitations are not disputed by either side and the ALJ correctly found that the exertional limitations of the Plaintiff mean that the Plaintiff can do no more than sedentary work.

However, the analysis does not end there.  Page 3 of the Medical Source Statement was properly received, and it dictates that Brewer has many nonexertional limitations.  Specifically, reaching, handling, and fingering can be done only occasionally (Tr. 210).  Brewer is further restricted by environmental limitations in that his tolerance for temperature extremes, vibration, humidity/wetness, and hazards are limited according to the report (Tr. 211).  These limitations are all repeated in great detail in the Functional Capacity Evaluation (Tr. 197-207) and are consistent with the remainder of the record.  While it would be helpful to have the missing page of the Medical Source Statement (and upon remand the ALJ is encouraged to make further attempts to obtain it if only to provide a complete picture to the vocational

expert), the other pages should not be completely ignored as they provide evidence consistent with the remainder of the record.

From the record, and considering the Plaintiff's RFC, age, education, and past work experience, it is easy to envision a substantial number of sedentary jobs that the Plaintiff would not be able to perform due to his nonexertional limitations. I can find no substantial evidence that suggests that these nonexertional limitations should be discounted or disregarded. Accordingly, I find that the ALJ erred in applying the grids to determine the disability of the Plaintiff, and should have sought the testimony of a vocational expert as a matter of law.

## CONCLUSION

The ALJ's findings are not supported by substantial evidence in the record and therefore cannot be upheld. I find that the Plaintiff has met his burden through step 4 of the 5 steps outlined in 20 C.F.R. §404.1520. The burden at step 5 is upon the Commissioner to show that the Plaintiff, given his RFC, age, education, and past work experience, can adjust to other work.

Accordingly, the case is remanded to the Commissioner for the purpose of determining the extent of the Plaintiff's disability, giving proper credibility to the Plaintiff's subjective testimony, and to obtain the opinion of a vocational expert, in order to determine if there are jobs in the national economy that could be performed by the Plaintiff. The Commissioner's motion for judgment

on the pleadings is denied and the case is remanded to the Commissioner for proceedings consistent with this decision.

**ALL OF THE ABOVE IS SO ORDERED.**

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   January 10, 2007
         Rochester, New York